**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ADRIAN ISTREFI,<br><br>                Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | Civil Action No. 13-3095 (SDW)<br><br><br>**OPINION**<br><br><br>August 29, 2014 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Adrian Istrefi's[1] ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security (the "Commissioner"), with respect to an administrative law judge's denial of Plaintiff's claim for Social Security Disability Insurance Benefits ("SSDI") pursuant to 42 U.S.C. § 405(g). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons stated herein, this Court **REMANDS** this matter for further review.

---

[1] Plaintiff names himself as "Adrian" in the Complaint (dkt. no. 1), but in various parts of the record, including the briefing of this matter, Plaintiff identifies himself as "Ardian."

1

I.     **PROCEDURAL AND FACTUAL BACKGROUND**

    A.     **Factual History**

Plaintiff is a 37-year-old male who emigrated from Macedonia in 1993. (R. 78-80.) He has an 8th grade education and is limited in his use of English. (R. 79-81.) He speaks English well but cannot read or write more than his name in English. (Tr. 77-78.) He lives in New Jersey with his wife and four children who, at the time of the administrative hearing, were all under the age of 15. (Tr. 80, 97.)

Prior to the onset of his allegedly disabling conditions, Plaintiff worked as a sanitation worker for over 15 years, most recently for Cardella Waste removing construction debris. (R. 78, 84.) This work required heavy lifting and carrying of objects weighing up to 200 pounds. (R. 82-83.) It also entailed frequent bending and standing. (*Id*.) Prior to Cardella Waste, he held a similar position at Spring Recycling for twelve years. (R. 83.) Plaintiff testified that he injured his back on August 17, 2009 during the scope of his employment with Cardella Waste. (R. 82, 84.)

Plaintiff testified that he is unable to return work as a result of the injury. (R. 86). He cites chronic back pain that radiates down his right leg. (*Id*.) Plaintiff contends he is able to walk about ten (10) minutes at a time before the back pain requires him to sit. (R. 88.) Plaintiff is only able to sit comfortably for approximately thirty (30) minutes at a time and now spends half the day lying down. (R. 88-89.) He testified that although he goes to bed around 10 or 11 o'clock, he does not fall asleep until 2 or 3 a.m. because of the severe pain radiating down his leg. (R. 90.) The injury has affected Plaintiff's lifestyle as he is unable to do many of the things he used to do socially, and he can no longer watch his children's sports games. (R. 90-95). He testified that he does not do any household chores, save for washing a few dishes. (R. 91-92.)

His wife does all the cooking and his children take out the garbage. (R. 92.) Plaintiff does not shower unless his wife is home because he has gotten stuck in the shower. (R. 92-93.) His wife helps him get dressed. (*Id.*)

### B. Relevant Medical History

Following Plaintiff's injury, he sought medical treatment at Concentra Medical Center on August 18, 2009. (R. 264.) There, he saw Dr. Rashanna Wade, M.D., who made an initial assessment that Plaintiff was suffering from a lumbar strain and lumbar radiculopathy. (R. 264.) He was instructed to get magnetic resource imaging ("MRI") on his spine for a definitive determination. (R. 264-65.) The MRI was performed on September 9, 2009. (R. 276.) It revealed that Plaintiff had broad-based central herniation at the L4-5 level. (R. 267-68.) He was then referred to Dr. Arash Emami ("Dr. Emami") through Cardella Waste's workers' compensation carrier. (R. 257.)

Dr. Emami evaluated Plaintiff and concluded that surgery was the best option for his back pain. Specifically, in an October 14, 2009 letter to Plaintiff's workers' compensation carrier, Dr. Emami noted that Plaintiff was complaining of severe radiculopathy in his right leg and on physical examination, he had an antalgic gait and had difficulty heel and toe walking. (R. 245.) He recommended that Plaintiff undergo a lumbar laminotomy and discectomy procedure. (R. 246.) Plaintiff was hesitant to undergo the surgical procedure and first resorted to conservative treatment options. (R. 245-46, 350.) Those methods did not abate the pain, however, and in November 2009, Plaintiff accepted Dr. Emami's recommendation of proceeding with the procedure. (R. 350.) Plaintiff underwent the recommended surgery at St. Joseph's Hospital in Paterson on December 14, 2009, which was performed Dr. Emami. (R. 332.)

Following the surgery, Plaintiff still suffered pain and stiffness and returned to Dr. Emami several times for consultations. (Pl.'s Br. 9.) His first post-operative visit was on December 23, 2009, and Plaintiff presented with complaints of pain and soreness. (R. 233.) Dr. Emami instructed Plaintiff to stay out of work and scheduled a follow-up visit. (*Id*.) Plaintiff continued treating with Dr. Emami in January and February of 2010. (R. 228-32.) In a February 5, 2010 letter to Plaintiff's workers' compensation carrier, Dr. Emami advised that a recent MRI of the operative area showed "dramatic improvement" with respect to the lumbar disc herniation and that Plaintiff's pain complaints were unsubstantiated by the MRI. (R. 339.) Plaintiff continued to treat with Dr. Emami and appeared to have last visited him in April 2010. (R. 335.) In an April 27, 2010 letter to Plaintiff's workers' compensation carrier, Dr. Emami states that Plaintiff had "significant symptom magnification with numerous inconsistencies"; however, Dr. Emami does note the existence of objective limitations in Plaintiff's capacity. (R. 334.) Dr. Emami opines that Plaintiff reached maximum medical improvement but advises that Plaintiff should seek other employment opportunities or vocational training and should not return to heavy manual labor. (R. 335.) He recommends that Plaintiff avoid repetitive bending, twisting, and lifting of objects more than ten (10) to twenty (20) pounds. (*Id*.)

On February 17, 2010, Plaintiff began treatment with Michael Marolla ("Marolla"), P.T., D.P.T. of Physical Therapy Associates of Wayne. (R. 314.) Plaintiff treated with Marolla for eighteen (18) sessions through March 31, 2010. (R. 297.) Plaintiff had some pain abatement as a result of physical therapy, which allowed him to be more productive around the house and commence a light walking program. (R. 297). Nevertheless, the pain continued to radiate down his right leg. (*Id*.) As such, Marolla found that Plaintiff could not lift or carry objects weighing over fifteen (15) pounds and could only push or pull items weighing less than ten (10) pounds.

4

(R. 470.)  Further, Marolla found that Plaintiff could only stand and walk for two hours per workday and could sit for less than six (6) hours per day.  (*Id*.)  Plaintiff was discharged from physical therapy on or about March 31, 2010 after Marolla determined that he had reached maximum medical benefit.  (R. 298.)

Notwithstanding the maximum medical benefit diagnosis, Plaintiff was admitted to th emergency room of Chilton Memorial Hospital on July 20, 2010 for severe back pain radiating down his right leg.  (R. 484-93.)  Plaintiff was prescribed several medications to alleviate the pain and muscle spasms.  (*Id*.)

Plaintiff began treating with Dr. Fuad Ahmad, M.D. ("Dr. Ahmad") as his primary care physician on August 8, 2010.  (R. 554-97.)  He diagnosed Plaintiff with a herniated disc at the L4-5 level with myelopathy, and a herniated disc at the L5-S1 level.  (R. 549-52.)  He opined that Plaintiff could continuously sit for up to thirty (30) minutes and for about two (2) hours total in a given workday.  (*Id*.)  Further, Dr. Ahmad opined that he could stand for only twenty (20) minutes at a time and for less than two (2) hours in a workday.  (*Id*.)  He determined that Plaintiff could occasionally lift and carry ten (10) pounds and was unable to push or pull more than ten (10) pounds.  (*Id*.)  Dr. Ahmad concluded that Plaintiff was completely disabled.  (*Id*.)

Plaintiff underwent two medical evaluations by non-treating medical sources.  A functional capacity evaluation was conducted on April 13, 2010 by physical therapist Barry Inglett ("Inglett").  (R. 285-88.)  Inglett reported that he observed Plaintiff walk with a cane, walk with an abnormal gait, and frequently change sitting positions and stand to make himself more comfortable.  (*Id*.)  The results of Inglett's testing placed Plaintiff at the less than sedentary level, but Inglett viewed the results dubiously as he believed Plaintiff was not putting forth maximum effort.  (*Id*.)  Plaintiff was also seen by Dr. Vijaykumar Kulkarni, M.D. ("Dr.

5

Kulkarni") on August 5, 2010 for an independent medical examination at the request of Plaintiff's employer's workers' compensation carrier. (R. 541-45.) Dr. Kulkarni observed Plaintiff walk with a limp and a cane and noted that Plaintiff needed assistance getting on and off the examination table. (*Id.*) Dr. Kulkarni reviewed Plaintiff's MRI records and found a recurrent disc herniation at L4-5 level that impinged on the L5 nerve root on the right, and also found that there was a disc herniation at L5-S1 level. (*Id.*) He thus diagnosed Plaintiff with a sprain and strain of the lumbar spine with an extruded disc herniation at the L4-5 level and a disc herniation at the L5-S1 level. (*Id.*) He also opined that Plaintiff had "residual post-traumatic fibromyositis with loss of range of motion and an altered gait." (*Id.*) Dr. Kulkarni concluded that Plaintiff had a permanent orthopedic disability of 70%. (*Id.*) It should also be noted that Dr. Norman Schachtel, M.D. conducted a residual functional capacity assessment at the Commissioner's request on June 8, 2010. (R. 477-83.) Plaintiff's residual functional capacity was assessed at the sedentary level, limited to carrying ten (10) pounds occasionally, less than ten (10) pounds frequently, and the ability to sit at least six (6) hours and stand at least two (2) hours. (*Id.*) Dr. Schachtel also found various postural limitations. (*Id.*)

In addition to physical impairments, Plaintiff alleges that he has mental impairments as well. He testified at the administrative hearing that the pain, pressure at home, and lifestyle changes have caused him to suffer anxiety and depression. (R. 94-95.) The evidence of record also shows that Dr. Ahmad treated Plaintiff for his mental ailments, and prescribed him various medications intended to treat mental impairments including Seroquel, Cymbalta, Alprazolam, and Clonazepam. (R. 209, 554-97.)

    **C.**    **Procedural History**

6

Plaintiff filed a Title II application for SSDI on March 4, 2010, with an alleged disability onset date of August 17, 2009. (R. 63, 108.) The claim was initially denied on June 19, 2010 and, again upon reconsideration on September 25, 2010. (R. 110, 116.) On October 6, 2010, Plaintiff submitted a written request for a hearing before an administrative law judge ("ALJ"). (R. 121.) The Plaintiff, represented by counsel, appeared and testified at the hearing on October 24, 2012. (R. 63.) The ALJ returned an unfavorable decision on January 24, 2012 (the "Decision"). (R. 60.) Plaintiff thereafter filed a request for review by the Appeals Council. (R. 58.) Plaintiff's previous counsel withdrew the request for Appeals Council review, but it was apparently without Plaintiff's consent. (R. 54.) Plaintiff's current counsel appeared in the matter and filed an amended request for review by the Appeals Council on July 12, 2012. (R. 43-49.) Plaintiff submitted evidence to the Appeals Council to consider that was not submitted to the ALJ; however, the Appeals Council denied Plaintiff's request to review the Decision. (Pl.'s Br. 5; R. 1-7.) Thereafter, Plaintiff filed a second claim for SSDI on March 29, 2013, with an alleged onset date of January 25, 2012, the day after the Decision. (Pl.'s Br. 5.) The second SSDI application was approved by a Notice of Award dated November 8, 2013, and Plaintiff has been in pay status since that time. (*Id.*) Accordingly, the only issue to be decided here is whether Plaintiff was disabled from August 17, 2009 through January 24, 2012, the date of the Decision.

## II.   LEGAL STANDARD

In social security appeals, district courts have plenary review of the legal issues decided by ALJs. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). The court's review of the ALJ's factual findings, however, is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial

7

evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Furthermore, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).  Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).  "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz*, 244 F. App'x at 479 (citing *Hartranft*, 181 F.3d at 360)).  The court is required to give substantial weight and deference to the ALJ's findings.  *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)).  Indeed, a

decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984).

## III. DISCUSSION

### A. SSDI Test

An individual will be considered disabled under the Social Security Act (the "Act") if he or she is unable to "engage in any substantial gainful activity [("SGA")] by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically accepted clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." *Id*.

In order to establish a prima facie case of disability under the Act, a claimant bears the burden of demonstrating: (1) that she was unable to engage in SGA by reason of physical or mental impairment that could have been expected to last for a continuous period of at least twelve months, and (2) that the existence of such impairment was demonstrated by evidence supported by medically acceptable clinical and laboratory techniques. *See* 42 U.S.C. § 1382c(a)(3).

In determining disability, the Social Security Administration ("SSA") utilizes a five-step sequential analysis. *See* 20 C.F.R. § 416.920; *see also Cruz,* 244 F. App'x at 479. A determination of non-disability at steps one, two, four, or five in the five-step analysis ends the inquiry. 20 C.F.R. § 416.920. A determination of disability at steps three and five results in a finding of disability. *Id.* If an affirmative answer is determined at steps one, two, or four, the SSA proceeds to the next step in the analysis. *See id.*

At step one, the Commissioner must determine whether the claimant is engaging in SGA. *See* 20 C.F.R. § 416.920(a)(4)(i). SGA is defined as work activity that is significant and done for payment. 20 C.F.R. § 416.910. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 416.972(a). "Gainful work activity" is work that is usually done for profit, whether or not profit is realized. 20 C.F.R. § 416.972(b). If an individual engages in SGA, he is not disabled regardless of the severity of his physical or mental impairments. 20 C.F.R. § 416.920(a)(4)(i). If the individual is not engaging in SGA, the Commissioner proceeds to the next step. 20 C.F.R. § 416.920.

At step two, the Commissioner must determine whether the claimant has a medically determinable severe impairment or a combination of severe impairments. 20 C.F.R. § 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. *See id*. An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. § 416.921. If the claimant does not have a severe impairment or severe combination of impairments, he is not disabled. 20 C.F.R. §

416.920(c). If the claimant does have a severe impairment or severe combination of impairments, the analysis proceeds to the third step. 20 C.F.R. § 416.920.

At step three, the Commissioner must determine whether the claimant's impairment or combination of impairments meets the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets the criteria of a listing and the duration requirement, the claimant is disabled. 20 C.F.R. § 416.920(d). If the claimant's impairment or combination of impairments do not, the analysis proceeds to the next step. 20 C.F.R. § 416.920(e). Following the third step, the ALJ must identify the individual's residual functional capacity ("RFC"). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 416.920(e). The ALJ considers all impairments in this analysis, not just those deemed severe. 20 C.F.R. §§ 416.920(e), 416.945; SSR 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the Commissioner must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. § 416.920(f). In making this determination, the Commissioner must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 416.920(e), 416.945. "Past relevant work" means work performed within the fifteen years prior to the date that the disability must be established. 20 C.F.R. § 416.960(b)(1). If the claimant has the RFC to perform his past relevant work, the claimant is not disabled. 20 C.F.R. § 416.960(b)(3). If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth step. *See* 20 C.F.R. § 416.920(a)(4)(iv).

At step five, the Commissioner must determine whether the claimant is able to do any other work considering his RFC, age, education, and work experience. *See* 20 C.F.R. § 416.920(g). The claimant bears the burden of persuasion in the first four steps. *See Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009). If the claimant establishes that his impairment prevents him from performing any of his past work, the burden shifts to the Commissioner at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. *See* 20 C.F.R. § 416.920(g); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987).

### B. The ALJ's Decision

As explained in the Decision, the ALJ determined that Plaintiff was not disabled as defined under the Act. At step one of the sequential analysis, the ALJ concluded that Plaintiff had not engaged in SGA during the relevant time period. (R. 65.) At step two, the ALJ found that Plaintiff had the following severe impairments: herniated discs of the lumbar spine with radiculopathy, status post lumbar laminectomy and discectomy. (R. 65.) Importantly, the ALJ did not make any mention of mental health impairments. (*Id.*)

At step three, the ALJ found that Plaintiff did not have any impairment or combination of impairments that met the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 65.) Specifically, no impairment or combination of impairments met the listings under 1.00, the musculoskeletal system. (R. 65.) Following step three, the ALJ determined that Plaintiff had the RFC to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a).[2] (R. 66.) In determining Plaintiff's RFC, the ALJ did not find the Plaintiff's statements concerning the

---

[2] Sedentary work is defined as: "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. 404.1567(a).

12

pain, intensity, and limiting effects resulting from his impairments to be credible because the ALJ found them to be inconsistent with the medical evidence of record. (R. 67.) The ALJ determined at step four that Plaintiff could not perform past relevant work due to the heavy exertional demands of a sanitation worker. (R. 70.) Finally at step five, the ALJ determined that Plaintiff was able to perform other jobs that existed in the national economy and thus, was not disabled. (R. 70.)

### C. Analysis

Plaintiff argues that the Commissioner erred at step two of the sequential analysis by failing to analyze the severity of his mental impairments. (Pl.'s Br. 19-26.) Further, Plaintiff argues that, with respect to the impairments the ALJ did find to be severe, the ALJ failed at step three to properly analyze whether those impairments met the criteria of a listed impairment. (*Id.*)

The Commissioner must determine at step two whether the claimant has a medically determinable severe impairment or a combination of severe impairments. 20 C.F.R. § 416.920(c). Where there is evidence of record of an impairment, the ALJ must analyze the impairment to determine whether it is *de minimis*, in which case the analysis would stop with respect to that impairment, or whether it is severe, in which case the analysis would continue. *See Bowen v. Yuckert*, 482 U.S. 137, 146-52 (1987).

The ALJ's entire analysis at step two is two sentences long, one of which is the legal observation that an impairment must have lasted or be expected to last for a consecutive period of more than twelve months to meet the definition of "severe." (R. 65.) There is no discussion, however, of Plaintiff's mental impairment(s) although the evidence of record shows that Plaintiff suffered from some mental deficiencies. For example, Plaintiff testified that he was depressed and experienced anxiety stemming from the injury to his back. (R. 94-95.) Additionally,

13

Plaintiff's primary care physician, Dr. Ahmad, had been prescribing various psychotropic and psychoactive medications to Plaintiff, including Seroquel, Cymbalta, and Alprazolam. (R. 209, 554-97.) Accordingly, the ALJ should have analyzed Plaintiff's mental impairments and determined whether they reached the statutory definition of "severe." The ALJ may have conducted this analysis and determined that Plaintiff's mental impairments were *de minimis*, but without a fully developed decision, this Court is unable to conduct the necessary review. *See Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 2005) (stating that "an administrative decision should be accompanied by a clear and satisfactory explication of the basis on which it rests" and without it, a reviewing court cannot "perform its statutory function of judicial review").

Similarly, the ALJ at step three cursorily stated that Plaintiff's severe impairments did not meet or medically equal the severity requirements set forth under Listing 1.00, the section that details the criteria applicable to the Musculoskeletal System. The ALJ did not provide any analysis as to how he reached his conclusion.

In relevant part, Listing 1.04 states as follows:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of nerve root (including the cauda equine) or the spinal cord. With (a) Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, Appx. I, § 1.04. The evidence of record shows that Plaintiff's post-surgery MRI of February 3, 2010, reveals that there was "a small right sided recurrent disc herniation causing some encroachment in the region of the right descending L5 nerve root." (R. 539.) The MRI also shows a small left sided disc herniation at the L5-S1 level. (R. 539.)

Additionally, Plaintiff's treating physician diagnosed him with a herniated disc at the L4-5 level with myelopathy, and herniated disc at the L5-S1 level. (R. 549-52.) These findings seem to place Plaintiff within the criteria of § 1.04, especially in light of Plaintiff's complaints of recurrent back pain radiating down his right leg. Yet, the ALJ did not analyze the listing criteria. Without such an analysis, the ALJ's decision cannot stand. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000) (reversing and remanding for the ALJ to discuss why the claimant's combination of impairments was not medically equivalent to one of the listed impairments). Accordingly on remand, the ALJ should analyze § 1.04 criteria.

It should also be noted that in concluding the sequential analysis, the ALJ greatly credited the opinion of Dr. Emami, but accorded little weight to the opinions of Dr. Ahmad and Marolla. (R. 69.) The ALJ determined that Dr. Ahmad's and Marolla's opinions were not consistent with the overall record. (*Id*.) He cites to three main reasons for this determination. First, he points to the sedentary RFC determination made by of Dr. Schachtel. (R. 69, 476-83.) This RFC determination differs from that of treating medical sources Dr. Ahmad and Marolla, both of whom determined that Plaintiff was completely disabled. (R. 459, 551.) Dr. Schachtel did not treat Plaintiff but simply provided a consultative IME at the Commissioner's request. (R. 483.) Second, the ALJ relies upon the IME conducted by Dr. Kulkarni at the behest of the workers' compensation carrier, which found that he was 70% disabled. (R. 69.) Notably, the ALJ correctly concluded that Dr. Kulkarni's "medical opinion is of limited evidentiary value since it is based on legal standards entirely different from those used by the Agency, but it is probative to the extent it demonstrates the claimant's back disorder is not completely disabling." (*Id*.) Third, the ALJ points to Dr. Emami's April 2010 opinion in which he opines that Plaintiff can return to work but just not as a heavy manual laborer. (*Id*.)

The Social Security Regulations describe the amount of weight an ALJ must give to the treating physician's opinion. *See* 20 C.F.R. §§ 404.1527, 416.927. The opinion of a treating physician is generally entitled to great weight and enjoys controlling weight when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" of record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The regulations instruct the ALJ to consider several factors in determining whether to give the treating physician's opinion controlling weight, including whether the physician adequately explains the bases for his or her opinion, whether the opinion is consistent with the record as a whole, and any other relevant factors. 20 C.F.R. §§ 404.1527(c)(3), (4), (6), 416.927(c)(3), (4), (6). Indeed, the Third Circuit has cautioned as follows: "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citing *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985)).

The ALJ's conclusion that Dr. Ahmad's and Marolla's opinions are contrary to the record as a whole is not supported by substantial evidence. The ALJ correctly notes that the 70% disability determination by Dr. Kulkarni is not conclusive with respect to the SSDI determination as they are based on different standards. Indeed, the Social Security Regulations are clear that the ALJ alone, not treating or examining physicians, is qualified to make the disability determination. *See* 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Yet, the ALJ still gave some credit to Dr. Kulkarni's opinion, but apparently did not give any credit to the portion of his opinion that supports treating sources Dr. Ahmad and Marolla. Dr. Kulkarni found that Plaintiff had a recurrent disc herniation at L4-5

16

level that impinged on the L5 nerve root on the right, and also found that Plaintiff had a disc herniation at L5-S1 level. (R. 541-45.) This is the same diagnosis as Dr. Ahmad, and is consistent with the findings of Marolla. (R. 457-59; 549-52.) Thus, this evidence supports the treating medical sources. Further, the ALJ's citation to treating physician Dr. Emami's opinion as record evidence that other treating physicians' opinions (Dr. Ahmad and Marolla) are not entitled to deference and are contrary to the record because a treating physician (Dr. Emami) opined differently is, in some sense, tautological. Essentially, the ALJ is concluding that Dr. Emami's opinion enjoys credibility over the opinions of Dr. Ahmad and Marolla because Dr. Emami's opinion is consistent with Dr. Emami's opinion. This logic is unpersuasive, especially in light of the new and material evidence discussed *infra*. On remand, the ALJ should consider the record as a whole in assessing which treating physician's opinions to credit and which to reject.

Finally, Plaintiff complains that the Appeals Council refused to consider new and material evidence when it rejected his request to review the Decision. (Pl.'s Br. 33-34.) Plaintiff argues that he submitted the August 24, 2012 report of Dr. Rajnik Raab, M.D.; the September 12, 2012 report of Dr. Danielle Groves, M.D.; the July 31, 2012 report of Dr. Imtiazuddin Siddiqui, M.D.; and the March 30, 2012 report of Paula Tedesco, APN to the Appeals Council. (Pl.'s Br. 5.) Plaintiff contends that these reports, rendered after the Decision, detail his ongoing treatment for mental and physical impairments. Plaintiff contends that it was reversible error for the Appeals Council to have disregarded this evidence. (Pl.'s Br. 33-34.)

Under the Act, district courts can order that additional evidence be taken by the Commissioner if new and material evidence is advanced that, for good cause, could not have been presented in the prior proceeding. 42 U.S.C. § 405(g). The Third Circuit held that the

evidence must satisfy a three-part test to be admissible: 1) it must be "new," not merely cumulative of what already exists in the record; 2) it must be "material" in that it must be relevant and probative and have "a reasonable possibility that the new evidence would have changed the outcome"; and 3) there must be good cause as to why the evidence was not already in the record. *Szubak v. Secretary of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984).

The evidence Plaintiff cites satisfies the first and third criteria. Many of these doctors had not begun treating Plaintiff until *after* the Decision was issued on January 24, 2012. For example, Tedesco did not begin treating Plaintiff until February 28, 2012, and Dr. Siddiqui did not begin treating Plaintiff until March 2012. (R. 50, 55.) As such, those records did not even exist at the time of the administrative hearing and are thus "new." For the same reason, Plaintiff has sufficiently demonstrated good cause.

With respect to the materiality criterion, the cited evidence is relevant and probative. It details how Plaintiff was diagnosed with major depressive disorder and had anxiety related disorders. (R. 52, 55.) The cited evidence also reveals that Plaintiff continued to experience "disabling axial low back pain" that stemmed from a disc herniation at the L4-5 and L5-S1 levels. (R. 34.) The evidence details the treating physician's recommendation that Plaintiff undergo another spinal fusion surgery. (R. 34, 36-37.) As such, there is a reasonable possibility that the cited evidence would have changed the outcome. Accordingly, the evidence should have been considered by the Appeals Council.

## VI. CONCLUSION

For the foregoing reasons, this Court finds that substantial evidence does not support the ALJ's decision. Accordingly, this Court **REMANDS** this matter to the ALJ for further proceedings consistent with this Opinion.

s/Susan D. Wigenton, U.S.D.J.

Orig: Clerk
Cc: Parties